Filed 7/7/25

# CERTIFIED FOR PARTIAL PUBLICATION[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CRST EXPEDITED, INC., et al.,<br><br>    Petitioners,<br><br>    v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>    Respondent;<br><br>ESPIRIDION SANCHEZ,<br><br>    Real Party in Interest. | F088569<br><br>(Super. Ct. No. 19CECG03266)<br><br><br>**OPINION** |

ORIGINAL PROCEEDINGS; petition for peremptory writ of mandate. Kristi C. Kapetan, Judge.

Fisher & Phillips, Annie Lau, Vincent J. Adams, Megan E. Walker, Shaun Voigt for Petitioners.

No appearance for Respondent.

Mallison & Martinez, Stan S. Mallison, Hector R. Martinez, Cody A. Bolce and Gonzalo Quezada for Real Party in Interest

-ooOoo-

---

[*]    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts IV.E. and IV.F of the Discussion.

In this writ proceeding, we issued an order to show cause to address a controversial question of statutory interpretation involving the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code,[1] § 2698 et seq.). PAGA stated that any provision of the Labor Code "that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency … for a violation of this code, *may*, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself *and* other current or former employees pursuant to the procedures specified in Section 2699.3." (§ 2699, former subd. (a), italics added.) The question is whether this text authorized an aggrieved employee to bring a lawsuit that seeks to recover civil penalties imposed for Labor Code violations suffered *only* by other employees.[2]

This type of PAGA action is referred to as "headless" because the employee prosecuting the action has abandoned the claims for civil penalties imposed for violations the employee suffered personally. The reason an employee would abandon the so-called "individual PAGA claims" is to avoid arbitrating them under the Federal Arbitration Act (FAA; 9 U.S.C. § 1, et seq.), as interpreted by *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking River*). Avoiding arbitration has two advantages. First, if there is no arbitration of the individual PAGA claims, there would be no stay of the trial court proceedings on the other claims pending completion of the arbitration. Thus, a delay would be avoided. Second, an arbitration might result in the arbitrator finding the employee was not aggrieved—that is, had not personally suffered a Labor Code violation. (See § 2699, former subd. (c) [definition of aggrieved employee].) Such a finding could cause the employee to lose standing to pursue the other PAGA claims in court.

---

**1**     Unlabeled statutory references are to the Labor Code.

**2**     This question is now pending before the California Supreme Court in *Leeper v. Shipt, Inc.* (2024) 107 Cal.App.5th 1001 (*Leeper*), review granted April 16, 2025, S289305.

The parties' arguments on whether headless PAGA actions are allowed focus on the meaning of the phrase "on behalf of himself or herself *and* other current or former employees" in a sentence that uses the permissive verb "may." (§ 2699, former subd. (a), italics added.) We recognize that *and* usually, but not always, is interpreted as a conjunctive that means "also" or "an additional thing." (*People v. Reynoza* (2024) 15 Cal.5th 982, 991.) In exceptional situations, however, it is sometimes " 'fair and rational' " to construe *and* disjunctively. (*Ibid*.) We conclude PAGA is not an ordinary statute, the problems it attempts to remedy are unusual, and *Viking River* drastically altered the legal landscape in which PAGA is applied. These exceptional circumstances and the PAGA's underlying purpose support the following legal conclusions. First, the *and* in former subdivision (a) of section 2699 is ambiguous. Second, PAGA's purpose of encouraging enforcement of California's labor laws is best served by interpreting the ambiguous *and* liberally to include both *and* and *or*.[3] Thus, the subdivision permitted the employee, as a representative of the Labor and Workforce Development Agency (LWDA), to bring a PAGA action seeking the recovery of civil penalties (1) for the Labor Code violations suffered only by the employee, (2) for the Labor Code violations suffered only by other employees, *or* (3) both. In short, headless PAGA actions were among the choices allowed the LWDA's representatives.

We therefore deny the employer's petition for a writ of mandate.

**FACTS**

*Defendants*

Defendant CRST Expedited, Inc. does business as The Transportation Solution, Inc. It is headquartered in Cedar Rapids, Iowa. In 2016, CRST Expedited acquired

---

**3** Simply stated, we have interpreted *and* to mean *and/or*. Rephrased in legal terminology, *and* was "used in its 'several' sense (A and B, jointly or severally)[, not] in its 'joint' sense (A and B, jointly but not severally)." (Kirk, *Legal Drafting: The Ambiguity of "And" and "Or"* (1971) 2 Tex. Tech. L.Rev. 235, 238.) A third description is that *and* was used as an inclusive disjunctive. (See pt. I.A., Definitions, *post*.)

Gardner Trucking, Inc., a California corporation, with headquarters in Ontario, California; that corporation's United States Department of Transportation number is 733151. As a result of a corporate restructuring, Gardner Trucking now operates within CRST Expedited, doing business as CRST The Transportation Solution, Inc. — Dedicated West.

The individual defendants include (1) Thomas J. Lanting, the previous owner of Gardner Trucking and its chief executive officer; (2) Juan Gutierrez, a general manager; (3) Ron Rodriguez, a supervisor and shop manager; and (4) David Tandy, a manager at the Gardner Trucking facility where Sanchez worked.

"Employer" refers collectively to defendants CRST Expedited, Gardner Trucking, Lanting, Gutierrez, Rodriguez, and Tandy. The terms "civil penalty," "violation," "PAGA claim," "individual PAGA claim," "nonindividual PAGA claim," and "PAGA action" are used in this opinion in accordance with the definitions set forth in part I.A., *post*.

*Plaintiff*

Plaintiff Espiridion Sanchez's primary language is Spanish, and his formal education ended after he completed the fifth grade in Mexico. His understanding of English is basic and limited, the English he knows was learned while working in the United States. He asserts he understands spoken English enough to get by at work but does not read English.

In October 2017, Tandy and Sanchez, an experienced tire technician, met at the Gardner Trucking facility on East American Avenue to complete the documents needed for Sanchez to begin working there. Tandy had a packet of documents and gave some to Sanchez to complete and sign. The documents were in English. The trial court noted the evidence did not indicate Sanchez asked for more time to review the documents or requested or was denied the opportunity to have the documents translated into Spanish.

4.

One of the documents signed by Sanchez was a "HANDBOOK ACKNOWLEDGMENT, AT-WILL EMPLOYMENT AGREEMENT AND AGREEMENT TO ARBITRATE DISPUTES."  The document stated Sanchez understood "that employment with Gardner Trucking is at the mutual consent of me and Gardner Trucking and is not for a definite period.  Accordingly, my employment with Gardner Trucking is 'at-will.' "  The agreement to arbitrate disputes stated any dispute, claim or controversy between Sanchez and Gardner Trucking (and/or its officers or employees) relating to or arising out of his employment or termination of his employment would be submitted to final and binding arbitration under the Federal Arbitration Act and in conformity with the procedures of the California Arbitration Act (Code Civ. Proc., § 1280 et seq.).  The third to last paragraph of the document was in bold text and read:  "I understand that by signing this agreement, I am giving up my right to a trial in a court of law and my right to a trial by jury."  (Boldface omitted.)

While working for Gardner Trucking as a tire maintenance technician, Sanchez frequently traveled offsite to work on trucks.  He was required to arrive quickly, perform repairs quickly, and then move to the next location.  Due to this time pressure, Sanchez ate his lunch while driving between worksites, which deprived him of a 30-minute, uninterrupted lunch break.  In addition, Sanchez provided and used his own tools and was not paid twice the minimum wage as required by law.  On two occasions, he had to purchase air compressors with his own money to complete repairs.  Despite filling out a reimbursement form and submitting the receipts, Tandy informed Sanchez that he would not be reimbursed.  When Sanchez's employment was terminated, he was not allowed to keep the air compressors.

Sanchez's employment at Gardner Trucking ended in 2018.  He alleges he was terminated by Rodriguez and Gutierrez after he carried out an order given to him by his supervisor.  Sanchez was not paid his final wages until approximately six days after his termination date and the amount paid did not reflect the amount he was owed pursuant to

5.

the Labor Code for hours worked, missed meal and rest breaks, overtime, and double time.

*PAGA Notice*

In a letter dated March 22, 2019, Sanchez's attorney provided a written notice to the LWDA and Employer pursuant to section 2699.3. The letter stated Sanchez sought "to assert a PAGA claim on behalf of the State of California and all other current or former employees who have been employed by [Employer] in California." The letter set forth nine types of Labor Code violations experienced by nonexempt employees at Gardner Trucking's locations and worksites in California. The letter also described how Sanchez had experienced eight of the Labor Code violations. Although the letter did not explicitly state Sanchez would seek civil penalties under PAGA for the violations he suffered, Sanchez's intent to pursue those civil penalties is reasonably implied from the letter's contents.

The LWDA did not respond to the notice within the 65-day statutory waiting period. (See § 2699.3, subd. (a)(2)(A).) Thus, by operation of law, Sanchez became an authorized representative (i.e., deputy, proxy, agent) of the State of California with permission to "commence a civil action pursuant to Section 2699" (§ 2699.3, subd. (a)(2)(A)) to collect civil penalties imposed by PAGA.

**PROCEEDINGS**

In September 2019, Sanchez filed a complaint in the Fresno County Superior Court against Employer with a caption stating it was for "Penalties Pursuant to [PAGA]." (Boldface omitted.) In October 2019, Sanchez filed the operative first amended complaint. Its prayer for relief was narrowed to requesting the penalties, attorney fees, costs and interest authorized by PAGA. The first amended complaint alleged Sanchez and other employees of Employer had suffered violations and were "aggrieved employees" within the meaning of PAGA. It asserted "[a]ll causes of action described herein are brought on behalf of PLAINTIFF on behalf of the State of California

6.

concerning labor violations of all current and former employees of DEFENDANTS and for the remedies provided by PAGA." The first amended complaint included the following heading: "**CAUSE OF ACTION** [¶] **VIOLATIONS OF LABOR CODE PRIVATE ATTORNEYS GENERAL ACT**." Under that heading, it included subheadings for "**PAGA BASIS ONE**" through "**PAGA BASIS EIGHT**." The eight bases alleged Employer (1) failed to pay minimum wages, (2) failed to pay overtime compensation, (3) failed to provide rest periods or, in lieu thereof, pay additional wages, (4) failed to provide meal periods or, in lieu thereof, pay additional wages, (5) failed to indemnify employees for expenses they incurred in discharging their duties, (6) intentionally failed to provide accurate wage statements, (7) failed to timely pay all wages owed upon termination or resignation of employees, and (8) failed to provide sick pay.

In December 2019, Employer demurrered, which the trial court overruled. In July 2020, Employer filed an answer that contained a general denial and 43 affirmative defenses, including the assertions that Sanchez lacked standing to pursue any claim under PAGA and that he and those for whom he sought relief were not "aggrieved employees" for purposes of PAGA.

In June 2022, the United States Supreme Court issued its decision in *Viking River*, *supra*, 596 U.S. 639, which concluded the FAA (1) preempted a rule of California law that "PAGA actions cannot be divided into individual and non-individual claims" if the parties' predispute arbitration agreement covered the individual PAGA claims and (2) compelled enforcement of the arbitration agreement as to the individual PAGA claims. (*Viking River*, *supra*, 596 U.S. at p. 662.) The United States Supreme Court also resolved a question of state law by concluding the plaintiff lacked standing to pursue the remaining nonindividual PAGA claims and, therefore, "the correct course [wa]s to dismiss her remaining claims." (*Viking River, supra,* at p. 663.)

7.

_Motion to Compel Arbitration_

In February 2023, relying on _Viking River_, Employer filed a motion to compel arbitration of the individual PAGA claims and to dismiss the nonindividual PAGA claims. After opposition and reply papers were filed, the trial court issued a tentative ruling to grant the motion. Neither party requested oral argument, and on May 25, 2023, the court adopted the tentative ruling as its order.

The trial court granted Employer's motion, concluding Employer had carried its burden of showing there was an agreement to arbitrate any dispute between Sanchez and Employer regarding his employment and finding Sanchez had not established the defense of unconscionability. Also, despite the principle that published "[d]ecisions of every division of the District Courts of Appeal are binding upon … all the superior courts of this state" (_Auto Equity Sales, Inc. v. Superior Court of Santa Clara County_ (1962) 57 Cal.2d 450, 455), the trial court refused to follow five decisions of the Court of Appeal concluding a plaintiff still had standing to pursue nonindividual PAGA claims in court after the individual PAGA claims had been ordered to arbitration. (See _Galarsa v. Dolgen California, LLC_ (2023) 88 Cal.App.5th 639, 653 (_Galarsa_) ["plaintiff's PAGA standing does not evaporate when an employer chooses to enforce an arbitration agreement"]; _Seifu v. Lyft, Inc._ (2023) 89 Cal.App.5th 1129, 1134; _Piplack v. In-N-Out Burgers_ (2023) 88 Cal.App.5th 1281, 1291; _Gregg v. Uber Technologies, Inc._ (2023) 89 Cal.App.5th 786, 792; _Nickson v. Shemran, Inc._ (2023) 90 Cal.App.5th 121, 134–135.) The trial court justified its refusal by stating the plain language of section 2699, subdivision (a) "facially requires, conjunctively, that the aggrieved employee bring the action on behalf of himself <u>and</u> other current or former employees." The court asserted "[t]his reading is consistent with the legislative intent."

On July 17, 2023, about seven weeks after the trial court's decision, the California Supreme Court unanimously rejected the United States Supreme Court's interpretation of PAGA and concluded "an order compelling arbitration of the individual [PAGA] claims

does not strip the plaintiff of standing as an aggrieved employee to litigate claims on behalf of other employees under PAGA." (*Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1114 (*Adolph*).) As a result, Adolph had standing to litigate the nonindividual PAGA claims in court even though the individual PAGA claims had been ordered to arbitration. (*Adolph*, *supra*, at p. 1123.) The California Supreme Court stated its "reading of PAGA's standing requirements not only follows from the statute's text but also aligns with its purpose and legislative history." (*Adolph*, *supra*, at p. 1122.) The court also concluded a superior court may stay the trial of the nonindividual PAGA claims until the arbitration has been completed in accordance with the arbitration agreement. (*Adolph, supra,* at p. 1125; see 9 U.S.C. § 3; Code Civ. Proc., § 1281.4.)

*Motion to Reconsider*

Three days after *Adolph* was filed, Sanchez applied for an ex parte order shortening the time to hear his motion to reconsider the order dismissing the nonindividual PAGA claims. The trial court granted the ex parte application, granted the motion to reconsider, and implemented the holding in *Adolph* by reinstating the nonindividual PAGA claims it had previously dismissed.

*Dismissal of the Individual PAGA Claims*

On January 30, 2024, Sanchez filed a motion to dismiss the individual PAGA claims. The notice of motion stated Sanchez was seeking "an order dismissing Plaintiff's claim for the recovery of penalties for himself ('Individual PAGA Claim') without prejudice because Plaintiff does not intend to arbitrate his individual PAGA claim [and] will only be pursuing a claim for the recovery of penalties for other aggrieved employees and the State of California ('Representative PAGA Claim')." The trial court granted the unopposed motion in March 2024. As a result of the dismissal, this lawsuit became a "headless" PAGA action.

In April 2024, Employer filed a motion for judgment on the pleadings, asserting Sanchez no longer had standing to pursue the nonindividual PAGA claims because he

had dismissed the individual PAGA claims. In June 2024, after an opposition and reply were filed, the trial court heard argument on Employer's motion and took the matter under submission. The next day, the court adopted its tentative ruling to deny the motion for judgment on the pleadings. Based on its reading of *Adolph*, the court concluded "that plaintiff's dismissal of his individual PAGA claims did not strip his standing to pursue PAGA remedies in a representative capacity."

*Writ Petition*

On September 3, 2024, Employer filed a petition for writ of mandate (with request for stay) challenging the trial court's denial of its motion for judgment on the pleadings. In January 2025, this court issued an order to show cause directing Sanchez to file a written return within 30 days of the order and directing Employer to file a reply to the return within 30 days of the date the return was filed. On April 14, 2025, Employer filed its reply to Sanchez's return to the writ petition. Two days later, the California Supreme Court granted review in *Leeper*, *supra*, 107 Cal.App.5th 1001.

## DISCUSSION

A motion for judgment on the pleadings asserts the plaintiff has failed to "state facts sufficient to constitute a cause of action against th[e] defendant." (Code Civ. Proc., § 438, subd. (c)(1)(B)(ii).) Whether a cause of action has been stated is a question of law subject to an appellate court's independent review. (*Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1401.) Whether a headless PAGA action states one or more causes of action recognized under California law depends on how PAGA is interpreted. Questions of statutory interpretation are questions of law subject to independent review on appeal. (*Davis Boat Manufacturing-Nordic, Inc. v. Smith* (2023) 95 Cal.App.5th 660, 672.) Accordingly, we conduct an independent evaluation of the issues raised in this writ proceeding without deference to the trial court's rulings.

10.

I.      OVERVIEW OF PAGA

PAGA affects many American social, economic, political and legal interests, ideas and values, which are sometimes in conflict or in tension.  One set of interests are inherent in the employer-employee relationship.  PAGA has attempted to reduce employer Labor Code violations and protect employees by incentivizing employees and their attorneys to bring private enforcement actions.  PAGA's incentives altered the earlier balance of power that favored employers by providing additional powers to employees aggrieved by Labor Code violations.

How PAGA is interpreted and applied reflects (1) the tension between the values underlying the constitutional right to a jury trial and the values supporting the rights of parties to contract to resolve their disputes though arbitration and thereby waive the right to a jury trial; (2) the conflict between federal authority and states' rights—specifically, the United States Supreme Court's enforcement of the FAA and its effect on the California Legislature's ability to set state labor law policy; and (3) the values and ideas that define the relationship between the courts and the Legislature and, more specifically, the role of the courts when interpreting a statute.  That role is defined differently by the two predominant theories of statutory interpretations—textualism and purposivism.  Those theories put different weights on a statute's text or wording and its underlying purpose and take different approaches to how a court acts as a legislature's faithful agent when the circumstances in which the statute is applied has changed significantly.  Here, the change is not a shift in the public's attitudes or values or the result of new technologies.  Rather, the changed circumstances in which PAGA is applied resulted from *Viking River* drastically altering the legal landscape.

A.      Definitions

The vocabulary PAGA has generated has some unfortunate, frustrating features that create uncertainty rather than clarity.  (See *Galarsa*, *supra*, 88 Cal.App.5th at pp. 647–649; *Viking River*, *supra*, 596 U.S. at p. 648 ["unfortunate feature of this lexicon" is

11.

the "use [of] the word 'representative' in two distinct ways"].) Consequently, we attempt to reduce that uncertainty by defining terms used in this opinion. Most of these terms do not have a single definition uniformly applied by federal and California courts interpreting PAGA since its enactment.

**Civil penalty**. The term "civil penalty" appears in the current and all earlier versions of section 2699, subdivision (a) and has an important role in defining the scope of a PAGA lawsuit. (See *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 188 (*ZB*) ["PAGA only creates a cause of action for civil penalties"].)[4] When used in PAGA and this opinion, the term has a specific meaning that does not include every penalty imposed by the Labor Code. (*ZB, supra,* at p. 185.) First, the Labor Code civil penalty must have been one that could have been "assessed and collected" by the LWDA. (§ 2699, former subd. (a).) Second, pursuant to former subdivision (i) of section 2699, the money recovered must be distributed (1) 75 percent to the Labor and Workforce Development Agency (LWDA) and (2) 25 percent to the employee aggrieved by the Labor Code violation for which the penalty was assessed. (See *Galarsa*, *supra*, 88 Cal.App.5th at p. 648.) In other words, the civil penalties an aggrieved employee may recover under PAGA are distinct from victim-specific relief that an employee could recover directly,

---

[4]    Despite its importance, the United States Supreme Court did not include the term "civil penalty" in its definition of " 'individual PAGA claim,' " which it stated referred "to claims based on code violations suffered by the plaintiff." (*Viking River*, *supra*, 596 U.S. at p. 649.) This truncated definition and other rhetorical techniques of the court tended to emphasize the plaintiff's personal role in the litigation and minimize the role and interests of the LWDA as the plaintiff's principal and the owner of the claims.

such as restitution of unpaid wages, statutory damages, and statutory penalties. (*ZB, supra*, at pp. 185–186.)[5]

**Violation**. The phrase "violation of this code" also appears in the current and earlier versions of section 2699, subdivision (a). " 'Violation' " means "a failure to comply with any requirement of the [Labor C]ode." (§ 22; *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 82, fn. 2 (*Kim*).)

**Claim—singular versus plural**. Part of PAGA's uncertain vocabulary involves the use of the singular "claim" and the plural "claims." Courts and practitioners have not used these terms in a consistent manner. Our purpose in specifically describing how we use the singular and the plural is to (1) increase the probability that our readers will understand how this opinion fits with other opinions that have used the terms differently and (2) provide a foundation for our explanation of why we disagree with Employer's use of the singular in its contention that a bifurcated PAGA claim is a single claim.

**PAGA claim**. The term "PAGA claim" does not appear in the statute. As used here, the singular "PAGA claim" has three components. First, it asserts the right to recover one or more *civil penalties* pursuant to PAGA for a single *violation*. Second, the right to recover is asserted by an aggrieved employee against his or her employer. (See § 2699, subd. (c)(1) [definition of aggrieve employee].) Third, the aggrieved employee asserting the right to recover is the authorized representative of the State of California. (See § 2699.3 [procedures for obtaining authorization].) Accordingly, the plural "PAGA

---

5       As further background, we note "civil penalties recoverable under PAGA fall into two categories." (*Stone v. Alameda Health System* (2024) 16 Cal.5th 1040, 1077 (*Stone*).) Some predated the enactment of PAGA when they could be recovered only by the state's labor law enforcement agencies. (*ZB, supra*, 8 Cal.5th at p. 185; *Galarsa, supra*, 88 Cal.App.5th at p. 649.) The others were created by PAGA for Labor Code violations that previously did not carry a civil penalty. (*ZB, supra*, at p. 185; *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 379 (*Iskanian*), overruled in part by *Viking Rivers, supra*, 596 U.S. at p. 639.)

claims" refers to attempts to recover the *civil penalties* associated more than one *violation*.

This opinion's use of *PAGA claim* and *PAGA claims* is consistent with the statement that "a PAGA action asserting multiple code violations affecting a range of different employees does not constitute 'a single claim' in even the broadest possible sense." (*Viking River*, *supra*, 596 U.S. at p. 654.) Our usage differs from how the singular "PAGA claim" was used in *Estrada v. Royalty Carpet Mills, Inc.* (2024) 15 Cal.5th 582. There, the court stated the second amended complaint "retained the PAGA claim from the original complaint" and that claim "sought PAGA penalties for various Labor Code violations[.]" (*Id.* at p. 595; see also, *Williams v. Superior Court* (2015) 237 Cal.App.4th 642, 649 ["case law suggests that a single representative PAGA claim *cannot* be split into an arbitrable individual claim and a nonarbitrable representative claim"]; *Viking River*, *supra*, at p. 654, fn. 6.)

**Individual PAGA claim**. In *Viking River*, the United States Supreme Court stated that "we will use 'individual PAGA claim' to refer to claims based on code violations suffered by the plaintiff." (*Viking River*, *supra*, 596 U.S. at p. 649.) Adding to the variety in terminology, the court sometimes shortened the term to "individual claims." For example, it stated "the FAA preempts the rule of *Iskanian* insofar as it precludes the division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." (*Id.* at p. 662.) And, unfortunately, it also used "individual claims" in a reference to non-PAGA claims. (*Viking River*, *supra*, at p. 655 ["PAGA actions do not adjudicate the individual claims of multiple absent third parties"].)

In *Adolph*, the California Supreme Court favored the shortened version, stating that "[f]or consistency, we use the terms 'individual' and 'non-individual' claims in accordance with the high court's usage in *Viking River*." (*Adolph*, *supra*, 14 Cal.5th at p. 1114.) In comparison, other decisions have used "individual claims" to describe non-PAGA claims that an employee pursues in his or her own capacity to recover victim-

14.

specific relief. (E.g., *Brooks v. AmeriHome Mortgage Co., LLC* (2020) 47 Cal.App.5th 624, 629 [plaintiff's complaint "alleged a single cause of action under PAGA and did not allege an individual claim for wage recovery"]; *Young v. RemX, Inc.* (2016) 2 Cal.App.5th 630, 633 [trial court "compelled arbitration of plaintiff's individual claim, dismissed the class claims, bifurcated the representative PAGA claim, and stayed the PAGA claim pending the completion of arbitration"]; *Reyes v. Macy's Inc.* (2011) 202 Cal.App.4th 1119, 1124 ["the PAGA claim is not an individual claim"].) Consequently, this opinion uses the longer term "individual PAGA claims" and, unlike the high courts, will not vacillate between it and the shortened term "individual claims."

Accordingly, in this opinion, "individual PAGA claim" means a particular type of "PAGA claim"—that is, one based on a violation *suffered by the plaintiff*. In *Galarsa*, we referred to such claims as "Type A" because of the "A" beginning arbitration and *Viking River*'s conclusion that such claims were arbitrable if covered by an arbitration agreement subject to the FAA. (*Galarsa*, *supra*, 88 Cal.App.5th at pp. 648–649.)[6]

**Nonindividual PAGA claim**. This nonstatutory term also was used in *Viking River* and a shortened version adopted in *Adolph*. We use the term "nonindividual PAGA claim" to mean a "PAGA claim" based on a violation *suffered by an employee other than the plaintiff*. In *Galarsa*, we labeled such claims "Type O," the "O" having been taken

---

[6] For purposes of clarity, we explicitly note our disagreement with the following statement by Division Two of the Fourth District: "What the Supreme Court called, as shorthand, an 'individual PAGA claim' is not actually a PAGA claim at all. It would exist even if PAGA had never been enacted. It is what we are calling, more accurately, an individual Labor Code claim." (*Gavriiloglou v. Prime Healthcare Management, Inc.* (2022) 83 Cal.App.5th 595, 605.) In our view, the United States Supreme Court used the term "individual PAGA claim" in accordance with this opinion's definition of the term despite the high court's failure to explicitly reference civil penalties recoverable under PAGA as an element that limits what constitutes a PAGA claim. (See *Viking River*, *supra*, 596 U.S. at p. 649; fn. 5, *ante*.) Thus, as used here and in *Viking River*, an "individual PAGA claim" is not a type of claim that could have been pursued even if PAGA had not been enacted.

from the word "other." (*Galarsa*, *supra*, 88 Cal.App.5th at p. 649.) Under the definitions adopted in this opinion, all PAGA claims can be classified as either individual PAGA claims or nonindividual PAGA claims. For the sake of internal consistency, this opinion will not use the truncated term "nonindividual claims." (Cf. *Adolph*, *supra*, 14 Cal.5th at p. 1124 ["trial court may exercise its discretion to stay the non-individual claims pending the outcome of the arbitration"].)

**PAGA action**. We use the singular "PAGA action" to mean the overall legal proceeding initially filed in court (i.e., the case or the lawsuit) that, as a practical matter, asserts multiple PAGA claims. A PAGA action is the "civil action" authorized by former subdivision (a) of section 2699. (See Code Civ. Proc., §§ 22 [definition of action], 24 [two kinds of actions—civil and criminal], 25 [a civil action arises out of an obligation or an injury], 30 [definition of civil action].) In accordance with *Adolph*'s analysis of the statutory term "civil action," a "single PAGA action" can be pursued " 'across two fora,' " with individual PAGA claims being arbitrated and nonindividual PAGA claims being litigated in court. (*Adolph*, *supra*, 14 Cal.5th at p. 1126.) Consequently, the term "PAGA action" is distinct from the term "cause of action."

Having laid a definitional foundation, we now address Employer's contention that Sanchez has alleged a single claim or single cause of action. (See fn. 4, *ante*.) Employer explains this contention by asserting: "Individual and non-individual PAGA claims are not separate statutory actions but two components of the same claim." Initially, we note that regardless of how the complaint's heading "**CAUSE OF ACTION**" and subheadings for "**PAGA BASIS ONE**" through "**PAGA BASIS EIGHT**" are interpreted, that interpretation of what constitutes a cause of action, claim, or count would not be controlling. (*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1595 [the labels in a complaint are not dispositive and courts look beyond them]; *Lacy v. Laurentide Finance Corp.* (1972) 28 Cal.App.3d 251, 256–257.) Further, the term "cause of action" is imprecise and its meaning varies with the context in which it is used. (*Baral*

16.

*v. Schnitt* (2016) 1 Cal.5th 376, 382, fn. 2; *Slater v. Blackwood* (1975) 15 Cal.3d 791, 795–796 [for purposes of res judicata, the primary rights theory is used to determine what constitutes a cause of action].) In the context of this proceeding, we conclude the most appropriate definition of "cause of action" is derived from the primary rights theory. (See *Crowley v. Kattleman* (1994) 8 Cal.4th 666, 681.) Thus, each wrongful act by an employer—that is, each breach of an obligation imposed by the Labor Code—gives rise to a separate cause of action. (*Ibid.*) Here, Sanchez's complaint initiated a single PAGA action that alleges violations of many different Labor Code provisions experienced by multiple employees and, thus, alleges many causes of action under the primary rights theory. In sum, in this opinion, "cause of action" means the same thing as *claim*.

**LWDA's**. This opinion sometimes uses the possessive noun "LWDA's" when referring to the PAGA claims or the PAGA action to emphasize that, under California law, the specific claims and the overall action belong to the LWDA in its capacity as an agency of the State of California. (*Turrieta v. Lyft, Inc.* (2024) 16 Cal.5th 664, 692, fn. 12 (*Turrieta*) ["the PAGA plaintiff ' "represents a single principal" '—the LWDA"].) This choice of possessive noun is based in part on case law stating PAGA actions "belong[] solely to the state" (*Provost v. YourMechanic, Inc.* (2020) 55 Cal.App.5th 982, 988); "a PAGA claim is representative and does not belong to an employee individually" (*Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539, 557); and "[t]he PAGA claims alleged in the former employees' complaint are owned by the state" (*Herrera v. Doctors Medical Center of Modesto* (2021) 67 Cal.App.5th 538, 542). Our choice of the possessive LWDA's also is intended to counterbalance the emphasis placed on the plaintiff by both (1) the United States Supreme Court's descriptors "individual" and "non-individual" and (2) judicial decisions that use the possessive form of the plaintiff's

surname, the possessive nouns "plaintiff's" or "employee's," or the possessive pronouns his or her.**7**

**Inclusive disjunctive**. The terms inclusive disjunctive and exclusive disjunctive often appear in an explanation of the possible meanings of the connector *or*. (E.g., *Lusardi Construction Co. v. Department of Industrial Relations* (2024) 102 Cal.App.5th 1329, 1341.) An inclusive disjunctive " ' " 'allows the possibility of either option, or both, which is also the literal meaning of *and/or.*' " ' " (*Ibid*.; see *Powers Farms v. Consolidated Irr. Dist.* (1941) 19 Cal.2d 123, 128 ["term 'and/or' is commonly defined to mean either 'and' or 'or' "].) In comparison, an exclusive disjunction allows only one of the options—that is, either A or B, but not both. (*Lusardi Construction Co.*, *supra*, at p. 1341.) As noted earlier, the inclusive disjunctive meaning also has been described as using *and* "in its 'several' sense (A and B, jointly or severally)[.]" (Kirk, *Legal Drafting: The Ambiguity of "And" and "Or"*, *supra*, 2 Tex. Tech. L.Rev. at p. 238.)

This opinion addresses the possibility to interpreting *and* as an inclusive disjunctive—that is, as *and/or*. This possible interpretation can be regarded as liberal because it does not eliminate *and*'s conjunctive meaning (both A and B) but adds flexibility by expanding that meaning to include the options of either A alone or B alone.

B.     Enactment of PAGA

In 2003, the Legislature enacted PAGA to address two problems. (*Iskanian*, *supra*, 59 Cal.4th at p. 379.) First, many Labor Code provisions were not being enforced because they were punishable only as misdemeanors without civil penalties or other

---

**7**      See *Kim*, *supra*, 9 Cal.5th at page 92, footnote 7 ("Kim's PAGA claim"); *ZB*, *supra*, 8 Cal.5th at page 198 ("employee's PAGA claim"); *Leeper*, *supra*, 107 Cal.App.5th at page 1012, review granted ("court on remand must order plaintiff's individual PAGA claim to arbitration"); *Balderas v. Fresh Start Harvesting, Inc.* (2024) 101 Cal.App.5th 533, 537 ("a plaintiff's individual PAGA claim"); and *Seifu v. Lyft, Inc., supra,* 89 Cal.App.5th 1129, 1134 ("his individual PAGA claim" and "his nonindividual PAGA claims").

sanctions attached and prosecutors rarely investigated or prosecuted Labor Code violations. The Legislature's solution was to enact new civil penalties for Labor Code violations significant enough to deter violations. (*Ibid.*)

Second, there was a shortage of government resources to pursue enforcement of the civil penalties. (*Iskanian*, *supra*, 59 Cal.4th at p. 379.) PAGA's legislative history stated the Department of Industrial Relations was issuing fewer than 100 wage citations per year statewide, despite a study that estimated over 33,000 serious and ongoing wage violations in Los Angeles' garment industry alone. (*Iskanian*, at p. 379.) The legislative history also referred to estimates that California's underground economy—that is, businesses operating outside the state's tax and licensing requirements—annually cost the state about three to six billion in lost revenues. (*Ibid.*) In adopting PAGA, the Legislature found and declared:

> "(a) Adequate financing of essential labor law enforcement functions is necessary to achieve maximum compliance with state labor laws in the underground economy and to ensure an effective disincentive for employers to engage in unlawful and anticompetitive business practices.

> "(b) Although innovative labor law education programs and self-policing efforts by industry watchdog groups may have some success in educating some employers about their obligations under state labor laws, in other cases the only meaningful deterrent to unlawful conduct is the vigorous assessment and collection of civil penalties as provided in the Labor Code.

> "(c) Staffing levels for state labor law enforcement agencies have, in general, declined over the last decade and are likely to fail to keep up with the growth of the labor market in the future.

> "(d) It is therefore in the public interest to provide that civil penalties for violations of the Labor Code may also be assessed and collected by aggrieved employees acting as private attorneys general, while also ensuring that state labor law enforcement agencies' enforcement actions have primacy over any private enforcement efforts undertaken pursuant to this act." (Stats. 2003, ch. 906, § 1.)

19.

C.    PAGA Amendments

Since its enactment, PAGA has been amended several times.  In 2004, the Legislature amended PAGA to exclude the recovery of certain civil penalties contained in the workers' compensation law (Stats. 2004, ch. 34, § 5.5 [Sen Bill No. 899]) and to add section 2699.3 along with a requirement that superior courts review and approve settlements (Stats. 2004, ch. 221, §§ 3, 4 [Sen. Bill No. 1809]).  (See § 2966, current subds. (s)(2), (t).)  The legislative history stated the purpose of requiring court approval of settlements "was 'to ensure that settlements involving penalties' under PAGA 'do not undercut the dual statutory purposes of punishment and deterrence, or result in unjust, arbitrary and oppressive, or confiscatory settlements.'  (3 Sen. J. (2003–2004 Reg. Sess.) pp. 4754–4755.)"  (*Turrieta, supra,* 16 Cal.5th at p. 695.)

In 2006 and 2010, two attempts were made to amend PAGA to require notice to the LWDA of any request for court approval of a settlement.  These attempts failed.  (*Turrieta*, *supra*, 16 Cal.5th at pp. 698–699.)

In 2015, the Legislature amended PAGA to provide employers with the right to cure violations of the Labor Code requirement that employees be provided with itemized wage statements and limited reliance on this cure to once in a 12-month period.  (Stats. 2015, ch. 445, §§ 1-3 [Assem. Bill No. 1506].)

In 2016, the Legislature expanded judicial oversight of settlements and added provisions to increase the LWDA's involvement in the settlement process.  (Stats. 2016, ch. 31, § 189 [Sen. Bill No. 836].)  These amendments and the related legislative history are described at length in *Turrieta*, *supra*, 16 Cal.5th at pages 695 through 699.

In 2024, "the Legislature enacted extensive amendments to the PAGA statutes. (Stats. 2024, ch. 44, § 1 [enacting Assembly Bill No. 2288, effective July 1, 2024]; *id.*, ch. 45, § 1 [enacting Senate Bill No. 92, effective July 1, 2024].)"  (*Turrieta*, *supra*, 16 Cal.5th at p. 681, fn. 3.)  The amendment's urgency provision identified the legislative purpose and intent underlying PAGA by stating:  "In order to further the *purpose and*

*intent* of the Labor Code Private Attorneys General Act of 2004 to protect workers from labor violations and address a pending ballot measure, it is necessary for this statute to take effect immediately." (Stats. 2024, ch. 44, § 3, italics added.)

A reason for describing PAGA's enactment and the various amendments is that each of these actions by the Legislature would have generated legislative history. The parties have presented no legislative history addressing the general topic of how PAGA was to interact with contractual arbitration or the more specific question of whether contractual arbitration could be avoided by bringing a headless PAGA action.

## II.    THE PRIOR VERSION OF PAGA APPLIES TO THIS CASE

The initial question of statutory interpretation we address is which version of PAGA applies to the lawsuit pursued by Sanchez. Another way of asking this question is: What effect, if any, do the 2024 amendments have on the present case?

The answer is clear from the newly enacted text, which added subdivision (v) to section 2699. (Stats. 2024, ch. 44, § 1.) That subdivision states the amendments "shall apply to a civil action brought on or after June 19, 2024." (§ 2699, subd. (v)(1).) The amendments "shall not apply to a civil action with respect to which the notice required by … section 2699.3 was filed before June 19, 2024." (§ 2699, subd. (v)(2).) Here, Sanchez's attorney submitted the notice required by section 2699.3 in March 2019 and filed the complaint in September 2019. The fact Sanchez dismissed the LWDA's individual PAGA claims in March 2024 does not change when the PAGA notice under section 2699.3 was filed or when the civil action was brought.

Based on the straightforward statutory text, we conclude the version of section 2699 in effect before the 2024 amendments applies to this case. That version of PAGA was last amended in 2016. (Stats. 2016, ch. 31, § 189.) It necessarily follows that this opinion does not decide whether a headless PAGA action can be brought under the version of PAGA that has been in effect since July 1, 2024.

III.	THE PROCESS OF STATUTORY INTERPRETATION

To determine whether headless PAGA actions are allowed, we must interpret the statute.  Because of the importance of the many interests at stake and the varying approaches taken in cases where headless PAGA actions have been pursued,[8] we establish context for our statutory interpretation by setting forth (1) the constitutional foundations for the enactment and interpretation of statutes, (2) the statutes that inform courts how the Legislature wants Californian statutes interpreted, and (3) the competing theories for how courts best act as the faithful agents of a legislature when interpreting a statute.  After establishing that context, we quote basic principles of statutory construction contained in the California Supreme Court's two most recent PAGA decisions.

A.	Constitutional Foundations

The system of state government established by the California Constitution divides power among three coequal branches.  (Cal. Const., art. IV, § 1 [legislative power]; Cal. Const., art. V, § 1 [executive power]; Cal. Const., art. VI, § 1 [judicial power]; see *People v. Bunn* (2002) 27 Cal.4th 1, 14 (*Bunn*).)  The separation of powers doctrine is set forth in section 3 of article III of the California Constitution:   "The powers of state government are legislative, executive, and judicial.  Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."  Despite this provision, there is no sharp line between the operations of each branch; each branch has exercised all three kinds of powers; and the resulting balance underlying the system assumes a certain degree of mutual oversight and influence.  (*Bunn*, *supra*, at p. 14.)

Although some overlap is allowed, the separation of powers doctrine is violated when a branch usurps the core or essential functions vested in another branch.  (*Bunn*,

---

[8]	See *Williams v. Alacrity Solutions Group, LLC* (2025) 110 Cal.App.5th 932; *Rodriguez v. Packers Sanitation Services Ltd., LLC* (2025) 109 Cal.App.5th 69, review granted May 14, 2025, S290182; *Leeper*, *supra*, 107 Cal.App.5th 1001, review granted; and *Balderas v. Fresh Start Harvesting, Inc., supra*, 101 Cal.App.5th 533.

*supra*, 27 Cal.4th at p. 14.)  A core or essential function of the Legislature is making law by statute, which requires the weighing of competing interests and determining social policy.  (*Id*. at pp. 14–15; see Cal. Const., art. IV, § 8, subd. (b).)  In comparison, a core or essential function of the judiciary is to resolve specific controversies between specific parties.  As part of that function, the courts interpret and apply existing laws, including statutes. (*Bunn*, *supra*, at p. 15.)  When performing this function, separation of powers principles compel the courts to carry out the legislative purpose of statutes and limit the courts' ability to rewrite statutes where drafting or constitutional problems appear.  (*Id*. at p. 16.)

> B.      Statutes Addressing Statutory Interpretation

The Legislature has defined the role of courts in interpreting its enactments.  Code of Civil Procedure section 1858 provides in full:  "In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is *in terms* or *in substance* contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."  (Italics added.)  In addition, Code of Civil Procedure section 1859 provides in part:  "In the construction of a statute the intention of the Legislature … is to be pursued, *if possible*; and when a general and particular provision are inconsistent, the latter is paramount to the former."  (Italics added.)  Since their enactment in 1872, neither statute has been amended or declared unconstitutional.  (See generally, *Superior Strut & Hanger Co. v. Port of Oakland* (1977) 72 Cal.App.3d 987, 1000 [a person has a constitutional right to a judicial determination of questions of law such as the interpretation and application of statutes].)

> C.      The Faithful Agency Doctrine:  Purposivism and Textualism

The foregoing constitutional and statutory provisions support the theory of "legislative supremacy" in which courts act as the "faithful agents" of the legislature when interpreting a statute.  (See Brannon, Congressional Research Service, *Statutory*

23.

*Interpretation: Theories, Tools, and Trends*, No. R45153 (May 10, 2023) p. 4 [legislative supremacy is the predominant view of judge's proper role in statutory interpretation] (hereafter *Theories, Tools, and Trends*);[9] Barrett, *Substantive Canons and Faithful Agency* (2010) 90 B.U. L. Rev. 109, 112 [conventional view is that federal courts function as the faithful agents of Congress] (hereafter Barrett); Sunstein, *Interpreting Statutes in the Regulatory State* (1989) 103 Harv. L.Rev. 405, 415 [faithful agency is the "most prominent conception of the role of courts in statutory construction"].) Under the legislative supremacy/faithful agent view, courts are responsible for ascertaining and enforcing legislative commands as accurately as possible. (Manning, *What Divides Textualists From Purposivists?* (2006) 106 Colum. L.Rev. 70, 71.)

How courts ascertain what a legislature has commanded and fulfill their responsibilities under the faithful agency doctrine is addressed by "the two main theories of statutory interpretation—purposivism and textualism." (*Theories, Tools, and Trends, supra*, at p. 2.) "[T]extualists and purposivists both claim[] to respect that doctrine more reliably than the other." (Goldsworthy, *The Real Standard Picture, and How Facts Make It Law: a Response to Mark Greenberg* (2019) 64 Am. J. Juris. 163, 171; see Manning, *Textualism and the Equity of the Statute* (2001) 101 Colum. L. Rev. 1, 15 [asserting textualists and purposivists understand themselves to be faithful agents of the legislature]; Barrett, *supra*, 90 B.U. L. Rev. at p. 112–117 [asserting textualists and purposivists share the premise that courts act as faithful agents of the legislature].)

The differences between the textualist and the purposivist theories are most apparent when "statutory text fits poorly with the purpose apparently underlying its enactment." (Manning, *Textualism and the Equity of the Statute*, *supra*, 101 Colum. L. Rev. at p. 3.) In that situation, purposivists "emphasize the statute's policy context; when a specific text does not correspond to its spirit or purpose, the letter of the law must

---

**9**      *Theories, Tools, and Trends* is available online at <https://www.congress.gov/crs-product/R45153> [as of June 27, 2025].

24.

yield." (*Ibid*.)[10] In contrast, textualists "give precedence to semantic context; judges must enforce the conventional meaning of a clear text, even if it does not appear to make perfect sense of the statute's overall policy." (*Id*. at pp. 3–4.) In other words, "textualists believe that when a statutory text is clear, that is the end of the matter." (*Id*. at p. 7.)

This opinion sets forth the two approaches to the faithful agency doctrine to provide context for the parties' arguments. Employer's arguments place a great deal of weight on textualism and Sanchez's arguments emphasizes purposivism. Having identified legislative supremacy and faithful agency was the doctrinal foundations for the interpretation of California statutes, we next address the principles of statutory construction applicable to PAGA.

D.      General Principles of Statutory Construction

In *Turrieta*, *supra*, 16 Cal.5th 664, the most recent PAGA decision of the California Supreme Court involving a private employer, the court set forth the following principles of statutory interpretation:

> "In resolving this issue, ' "our fundamental task," ' as with any question of statutory interpretation, ' "is to determine the Legislature's intent so as to effectuate the law's purpose." [Citation.] "We begin by examining the statutory language, giving it a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language in isolation; rather, we look to the entire substance of the statutes in order to determine their scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statutes' nature and obvious purposes. [Citation.] We must harmonize the various parts of the enactments by

---

**10**     The following statements illustrate the purposivists' approach. "It is a well-established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute." (*Bob Jones University v. United States* (1983) 461 U.S. 574, 586.) "It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers." (*Church of the Holy Trinity v. United States* (1892) 143 U.S. 457, 459.) Applying this purposivist approach, the majority in *Lewis v. United States* (1998) 523 U.S. 155, determined a literal reading of a statute was not a sensible interpretation because it would "dramatically separate the statute from its intended purpose." (*Id*. at p. 160.)

25.

considering them in the context of the statutory [framework] as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history." ' " (*Turrieta*, *supra*, 16 Cal.5th at p. 687, fn. omitted, quoting *Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 14.)

In *Turrieta*, the issue was whether a PAGA plaintiff was authorized "to intervene in the ongoing PAGA action of another plaintiff asserting overlapping claims, to require a court to consider objections to a proposed settlement in that overlapping action, and to move to vacate the judgment in that action[.]" (*Turrieta*, *supra*, 16 Cal.5th at pp. 676–677.) The court stated that "because a textual analysis is not dispositive, we examine additional considerations, including other PAGA provisions that are relevant to the parties' arguments on whether intervention on the state's behalf would further PAGA's purpose." (*Id.* at p. 691.) Ultimately, the court determined a PAGA plaintiff did not have the authority to intervene. (*Turrieta, supra,* at p. 677.) The court stated its "conclusion best comports with the relevant provisions of PAGA as read in their statutory context, in light of PAGA's legislative history, and in consideration of the consequences that would follow from adopting [the] contrary interpretation." (*Ibid.*) The foregoing description of how our Supreme Court applied principles of statutory construction in *Turrieta* demonstrates the court is not at one end or the other of the textualist-purposivist spectrum, but somewhere in between.

Next, we supplement the general principles of statutory construction set forth in *Turrieta* with a principle specific to certain Labor Code provisions. That principle was included in *Stone*, a PAGA case involving a public employer that was decided two weeks after *Turrieta*. Justice Corrigan, writing for a unanimous court, stated: "Considering the remedial nature of statutes governing employees' wages, hours, and working conditions, these provisions are liberally construed to promote worker protection." (*Stone*, *supra*, 16 Cal.5th at p. 1052.)

Our Supreme Court's more detailed version of this principle provides: "We agree that the remedial purposes of the wage and hour laws require they ' "not [be] construed within narrow limits of the letter of the law, but rather are to be given liberal effect to promote the general object sought to be accomplished." ' (*Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 702; see *Brinker Restaurant Corp. v. Superior Court* [(2012)] 53 Cal.4th [1004,] 1026–1027.)" (*Mendoza v. Nordstrom, Inc.* (2017) 2 Cal.5th 1074, 1087.) This principle demonstrates that, on the textualism-purposivism spectrum, California courts slide further towards purposivism when a statute, like PAGA, involves California wage and hour laws.

## IV.  HEADLESS PAGA ACTIONS

### A.  Statutory Text

The process of statutory interpretation begins with the words of the statute. (*Turrieta*, *supra*, 16 Cal.5th at p. 687.) Here, we set forth the definition of an "aggrieved employee" to provide context for the disputed text. An "aggrieve employee" is "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." (§ 2699, former subd. (c).) The disputed text stated:

> "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the [LWDA] … for a violation of this code, *may*, as an alternative, be recovered through a *civil action* brought by an *aggrieved employee* on *behalf of himself or herself and other current or former employees* pursuant to the procedures specified in Section 2699.3. (§ 2699, former subd. (a), italics added.)

The italicized word "may" is defined in section 15, which states: " 'Shall' is mandatory and 'may' is permissive." The word "permissive" means "[r]ecommending or tolerating, but not compelling or prohibiting; giving power of choice <permissive legislation>." (Black's Law Dict. (12th ed. 2024) p. 1374.) Wording similar to that contained in former subdivision (a) also appeared in former subdivision (g)(1) of section 2699, which stated in part:

27.

"Except as provided in paragraph (2), an *aggrieved employee may* recover the civil penalty described in subdivision (f) in a *civil action* pursuant to the procedures specified in Section 2699.3 filed on *behalf of himself or herself and other current or former employees* against whom one or more of the alleged violations was committed.  (Italics added.)

Employer argues the statutory text clearly and unambiguously only allows an aggrieved employee to bring a civil action "on behalf of himself or herself *and* other current or former employees" (§ 2966, former subd. (a), italics added) and does not allow an aggrieved employee to bring a civil action only on behalf of other current or former employees.  Employer asserts the conjunctive "and" clearly indicates individual PAGA claims and nonindividual PAGA claims are a package deal and must be brought together.

In contrast, Sanchez argues the word "and" is ambiguous and its meaning in former subdivision (a) of section 2699 depends on grammatical context.  As support, Sanchez cites Adams & Kaye, *Revisiting the Ambiguity of "And" and "Or" in Legal Drafting* (2006) 80 St. John's L.Rev. 1167 (hereafter *Revisiting the Ambiguity*).[11] Sanchez emphasizes PAGA's use of "may" in enabling prefatory language (as opposed to the use of obligatory prefatory language) and argues the statutory grant of authority, when viewed in light of PAGA's underlying purpose and the maxim that "[t]he greater includes the less" (Civ. Code, § 3536) compels the conclusion that a plaintiff was given the choice of pursuing only the nonindividual PAGA claims, which is a "less" included within the "greater" authority given by PAGA.[12]

---

[11]    See Kirk, *Legal Drafting:  The Ambiguity of "And" and "Or"*, *supra*, 2 Tex. Tech. L.Rev. 235.

[12]    We do not analyze Sanchez's arguments about the ambiguity of the connector *or* in the phrase "current or former employees" (§ 2699, former subd. (a)) because Employer does not contend that use of *or* requires plaintiff to choose between either pursuing penalties on behalf of only current employees or pursuing penalties on behalf of only former employees.  Rather, Employer asserts "the use of the disjunctive 'or' between 'current' and 'former' provides *more* pathways for a PAGA litigant, not fewer."  In other words, Employer interprets the connector *or* in that context as an inclusive disjunctive.

28.

An argument about the meaning of the word *and* was presented to the California Supreme Court in *Adolph*. The employer argued the plaintiff, upon being compelled to arbitrate the individual PAGA claims, could no longer satisfy PAGA's requirement that the action "be … brought by an aggrieved employee on behalf of himself or herself *and* other current or former employees." (§ 2699, former subd. (a), italics added; see *Adolph*, *supra*, at p. 1126 [part IV.C.].) The court rejected this argument without directly addressing the meaning of the word *and*. It concluded that, despite the bifurcation, Adolph was pursuing a single PAGA *action* on behalf of himself and other employees, " 'albeit across two fora.' " (*Adolph*, *supra*, 14 Cal.5th at p. 1126.) In other words, the textual basis for the decision was the broad meaning given the term "civil action," and the civil action included both individual PAGA claims and nonindividual PAGA claims.

B.      Ambiguity

The parties' disagreement about the meaning of *and* raises the threshold question of statutory construction—whether the statute's "words are ambiguous—that is, reasonably susceptible to more than one interpretation." (*Cavey v. Tualla* (2021) 69 Cal.App.5th 310, 336; *Merced Irrigation Dist. v. Superior Court* (2017) 7 Cal.App.5th 916, 926 [existence of statutory ambiguity is a question of law].) In an effort to be clear, we explicitly divide our analysis of the existence of an ambiguity into two main steps. The first step is relatively small and identifies the theoretical or abstract ways in which the statute's text might be interpreted. The second, more significant step addresses whether the grammatically possible interpretations identified are reasonable.

*1.      Ambiguity in the Abstract*

In 1865, the California Supreme Court stated that "the word *and* is not always to be taken conjunctively. It is sometimes, in a fair and rational construction of a statute, to be read as if it were *or*, and taken disjunctively." (*People v. Pool* (1865) 27 Cal. 572, 581.) In 2024, Chief Justice Guerrero, writing for a unanimous court, quoted this language from *Pool* and stated: "Nevertheless, while '[i]t is true that courts will

29.

sometimes substitute "or" for "and," and vice versa, when necessary to accomplish the evident intent of the statute, ... doing so is an exceptional rule of construction.' " (*People v. Reynoza*, *supra*, 15 Cal.5th at p. 991, quoting *In re C.H.* (2011) 53 Cal.4th 94, 102–103.)

Courts in other states also recognize *and*'s potential ambiguity. For example, the Alabama Supreme Court stated:

> " ' "*Every* use of 'and' or 'or' as a conjunction involves *some* risk of ambiguity." Maurice B. Kirk, *Legal Drafting: The Ambiguity of "And" and "Or,"* 2 Texas Tech L.Rev. 235, 253 (1971)(emphasis in original). Thus, in the main text of *Words and Phrases* (1953)—excluding pocket parts—the word "and" takes up 61 pages of digested cases interpreting it in myriad ways, and the word "or" takes up another 84 pages of digested cases interpreting it in an equally broad array of senses. Virtually every book on drafting legal documents contains a section on the ambiguity of the two words.' " (*South Trust Bank v. Copeland One, L.L.C.* (Ala. 2003) 886 So.2d 38, 42; see *Dow v. Honey Lake Valley Resource Conservation Dist.* (2021) 63 Cal.App.5th 901, 903.)

Federal courts also recognize *and* is capable of being interpreted in more than one way. In *Shaw v. National Union Fire Ins. Co.* (11th Cir. 2010) 605 F.3d 1250, the court quoted Professor Kirk's assertion that every use of *and* involves some risk of ambiguity and stated: "The problem with *and* is that 'chameleonlike, it takes its color from its surroundings.' " (*Id*. at p. 1253; see *Reese Bros., Inc. v. United States* (3d Cir. 2006) 447 F.3d 229, 235 ["and" can be either conjunctive or disjunctive].) More recently, the United States Supreme Court acknowledged a provision that used *and* to link three conditions was subject to different interpretations "when viewed only as a matter of abstract grammar." (*Pulsifer v. United States* (2024) 601 U.S. 124, 138.)

In accordance with the case law and secondary authorities, the conjunctive/disjunctive canon included among the semantic canons of statutory construction set forth in *Theories, Tools, and Trends* provides: " 'And' *usually* 'joins a conjunctive list,' combining items, while 'or' *usually* joins 'a disjunctively list,' denoting

30.

alternatives." (*Theories, Tools, and Trends*, *supra*, at p. 54, italics added.) The use of "usually" denotes a general rule that has exceptions.

In sum, the foregoing authorities establish beyond doubt that, in the abstract, the connector *and* is ambiguous because it can be interpreted in more than one way.[13]

### 2. *Reasonableness of the Proffered Interpretations*

The possibility of *and* having multiple meanings does not establish a particular statute using the connector *and* is ambiguous. Accordingly, we undertake the next analytical step and examine PAGA's language in context to determine whether the competing interpretations asserted by the parties are reasonable.

This analytical step was taken in *People v. Reynoza*, *supra*, 15 Cal.5th 982, and is reflected in the court's conclusion that a Penal Code provision using the connector *and* "is reasonably susceptible to both proffered interpretations and, thus, is ambiguous." (*Id.* at p. 990.) This step, with a different outcome, was undertaken in *Pulsifer v. United States*, *supra*, 601 U.S. 124, when the court considered the disputed text in its legal context and concluded the "two grammatical possibilities [were reduced] to just one plausible construction." (*Id*. at pp. 141–142.)

Whether Employer's interpretation of former subdivision (a) of section 2699 is reasonable is easily resolved. That interpretation relies on the ordinary and usual usage of *and* as a conjunctive. Although Employer's briefs did not address the impact of the statute's use of the permissive *may*, we conclude its interpretation is reasonable. (See *Leeper*, *supra*, 107 Cal.App.5th at pp. 1009–1010, rev. granted; *People v. Reynoza*, *supra*, 15 Cal.5th at p. 990 [provision with the connector "and" was reasonably susceptible to the conjunctive reading].)

---

[13] In an order issued the week before oral argument, we described the two-step analysis of ambiguity and advised the parties it was probable we would adopt that method of analysis and conclude *and* is ambiguous in the abstract.

In contrast, whether Sanchez's interpretation is reasonable in the context of PAGA requires a more detailed inquiry because Sanchez relies on the exception to the usual usage of *and*.[14] Before considering *and* in its grammatical context, we address PAGA in its broader legal context and ask whether PAGA and the circumstances in which it is applied are exceptional (i.e., extraordinary). The reason for this inquiry is that treating *and* as a disjunctive "is an exceptional rule of construction" (*In re C.H.*, *supra*, 53 Cal.4th at p. 103), which suggests that interpretation should be adopted only in exceptional circumstances.

### a.     *Context and Exceptional Circumstances*

PAGA is not an ordinary statute for several reasons. First, it creates a type of *qui tam* action that authorizes a specific group of people—aggrieved employees—to bring suit to recover civil penalties that are paid in part to the state. (*Iskanian*, *supra*, 59 Cal.4th at p. 382.) Although "the use of qui tam actions is venerable" (*ibid.*), statutes authorizing such actions are not the norm.

Second, PAGA was enacted to address a specific problem not typically found in arenas governed by California statute. That problem was the inadequate enforcement of statutory provisions—specifically, Labor Code provisions addressing wages, hours, and working conditions. Thus, the problem PAGA addresses is not ordinary.

Third, the Legislature has explicitly identified the purposes of both PAGA and the wage and hour provisions of the Labor Code enforced through PAGA. (See Stats. 2003, ch. 906, § 1, subds. (a)–(d); § 90.5, subd. (a) ["policy of this state to vigorously enforce minimum labor standards"].) The explicit statements of policy and purpose provide a

---

**14**     An example where the exception rather than the usual usage of *and* was adopted is our Supreme Court's interpretation of Penal Code section 25, subdivision (b). The court concluded the statute created two distinct and independent grounds for a finding of not guilty by reason of insanity despite the statute's use of *and* to connect the two grounds. (*People v. Skinner* (1985) 39 Cal.3d 765, 769; accord, *People v. Lawley* (2002) 27 Cal.4th 102, 170.)

stable foundation for analysis of the text and the consequences of the competing interpretations because courts do not have to draw inferences about the Legislature's purpose. More bluntly, in the context of PAGA, legislative intent and purpose are not simply "constructs, devised more to justify intuitions or outcomes." (Fallon, *The Statutory Interpretation Muddle* (2019) 114 N.W.U. L.Rev. 269, 281.)

Fourth, the California Supreme Court has recognized that California's wage and hour provisions are not construed within narrow limits of *the letter of the law* but are construed liberally to promote the general objective of the statute. (See *Mendoza v. Nordstrom, Inc.*, *supra*, 2 Cal.5th at p. 1087; see also, *Stone*, *supra*, 16 Cal.5th at p. 1052.)

The last factor we consider involves history and the circumstances in which PAGA is applied. Those circumstances are much different from those that existed when PAGA was originally enacted or when it was amended in 2016. After the California Supreme Court decided *Iskanian* in June 2014, published decisions of the Court of Appeal held a predispute arbitration agreement could not be the basis for compelling arbitration of the LWDA's PAGA claims being pursued in court by an aggrieved employee. (See *Herrera v. Doctors Medical Center of Modesto, Inc., supra*, 67 Cal.App.5th at p. 549, fn. 2 [collecting cases]; see also, *ZB*, *supra*, 8 Cal.5th at p. 198 ["employee's predispute agreement to individually arbitrate her claims is unenforceable where it blocks [the] PAGA claim from proceeding"].) As a result, the LWDA's PAGA claims were kept together in a single forum. This fundamental characteristic of a PAGA action was changed when *Viking River* (1) overrode the principle that PAGA claims were not subject to arbitration under predispute agreements and (2) held the FAA required the LWDA's individual PAGA claims to be arbitrated pursuant to the such agreements. (*Viking River*, *supra*, 596 U.S. at p. 662.) Consequently, *Viking River* dramatically changed the legal landscape in which PAGA was applied. (See generally, Sunstein, *Interpreting Statutes in the Regulatory State*, *supra*, 103 Harv. L.Rev. at pp. 422–423 [a

significant change in circumstances since a statute's enactment may produce ambiguity]; Adler, *A Conversational Approach to Statutory Analysis: Say What You Mean & Mean What You Say* (1996) 66 Miss. L.J. 37, 119 [changes in the circumstances in place when the statute was enacted include situations where the legal landscape changes after enactment and situations where factual assumptions or attitudes have changed]: *Mail Fraud* (1987) 101 Harv. L. Rev. 329, 336 ["Statutory interpretation in light of new or changed circumstance is a power implicitly delegated to the courts by Congress."].) Furthermore, it can be argued that the change undermined the Legislature's purpose for enacting PAGA. (See *Hernandez v. Ross Stores, Inc.* (2016) 7 Cal.App.5th 171, 178 ["requiring an employee to litigate a PAGA claim in multiple forums would thwart the public policy of PAGA to 'empower employees to enforce the Labor Code' on behalf of the state"].) As a result, the legal context in which PAGA is now applied is far from ordinary.

The foregoing factors lead us to conclude that PAGA and the circumstances in which it is applied are exceptional (i.e., extraordinary), which supports the possibility that it is reasonable to construe *and* as an inclusive disjunctive—that is, as encompassing both *and* and *or*.[15] Stated another way, the statute and circumstances before us are unusual, which increases the probability that the usual and ordinary meaning of *and* should not be adopted.

### b.     *Grammatical Context—Permissive Verb*

Having examined the larger picture, we consider the grammatical context in which *and* was used. The first aspect we consider is the use of *and* in a sentence containing the permissive verb "may." (§ 2699, former subd. (a).) This grant of permission stands in contrast to sentences that mandate or prohibit specified conduct and is significant to our

---

**15**     The term reasonable, which is a component of the definition of ambiguity, is used in this sentence as an equivalent of the phrase "fair and rational" used in *Pool*, *supra*, 27 Cal. at page 581.

evaluation of the reasonableness of Sanchez's interpretation. (See generally, *Revisiting the Ambiguity*, *supra*, 80 St. John's L.Rev. at pp. 1172–1179.)

The scope of discretion granted by the use of *may* in former subdivision (a) of section 2699 is ambiguous because it can be interpreted in at least two ways. (See *Revisiting the Ambiguity*, *supra*, 80 St. John's L.Rev. at p. 1173 ["Language of discretion gives rise to greater ambiguity than does language of obligation"].) A narrow interpretation of the permission granted concludes the aggrieved employee is allowed only to choose between (1) bringing the PAGA action and (2) not bringing the PAGA action. Employer adopts this interpretation and argues the prepositional phrases "by an aggrieved employee on behalf of himself or herself and other current or former employees" set forth a condition that the "civil action" must satisfy to be authorized by the statute. (§ 2699, former subd. (a).) In contrast, the broader interpretation adopted by Sanchez concludes the aggrieved employee has not only the choice of deciding whether or not to pursue the PAGA action[16] but also the choice of deciding which type of PAGA claims to include in the lawsuit.

The choices granted by the text of former subdivision (a) of section 2699 were addressed indirectly by the California Supreme Court in the following dicta: "As Justice Chin correctly observes, '*every* PAGA action, *whether seeking penalties for Labor Code violations as to only one aggrieved employee*—the plaintiff bringing the action—*or as to other employees as well*, is a representative action on behalf of the state.' "[17] (*Iskanian*,

---

**16** "Of course employees are free to choose whether or not to bring PAGA actions." (*Iskanian*, *supra*, 59 Cal.4th at p. 383.)

**17** Recast in generic terms, this statement treats language providing "an employee may pursue A and B" as giving the employee the option of (1) pursing only A *or* (2) pursuing both A and B. The statement is silent on whether the employee has a third option of pursuing only B. Thus, although the dicta does not speak directly to the possibility of pursuing only nonindividual PAGA claims (i.e., B in generic terms), it does approve another option (i.e., only A) that would not exist under a conjunctive reading of *and*.

35.

*supra*, 59 Cal.4th at p. 387, italics added.)  This statement describes two kinds of PAGA actions—one seeking penalties for violations as to only the aggrieved plaintiff and a second seeking penalties for violations as to the plaintiff and other employees "as well." Thus, the statement indicates the court viewed PAGA as giving an aggrieved employee more than the choice of suing or not suing for PAGA's civil penalties.  The statement supports the interpretation that an employee (1) might choose to pursue only individual PAGA claims or (2) also might choose to pursue individual PAGA claims and nonindividual PAGA claims as well.  Consequently, the statement is not consistent with the narrow reading of *may* or with the conjunctive reading of *and* advocated by Employer.

We conclude the dicta supports the conclusion the statutory text is *at least reasonably susceptible* to more than Employer's strictly conjunctive interpretation.  The dicta cannot be regarded as an offhanded remark that is illogical (i.e., unreasonable) when subject to scrutiny.  Rather, it makes sense to allow PAGA plaintiffs the choice of pursuing civil penalties only for the individual PAGA claims instead of requiring PAGA plaintiffs to pursue *both* individual PAGA claims *and* nonindividual PAGA claims.  The logic or commonsense of allowing an aggrieved employee this choice is illustrated by the following example.  If the plaintiff's personal causes of action (i.e., nonPAGA claims) are not covered by an arbitration agreement, the plaintiff can litigate those claims in court.  Allowing the plaintiff to pursue only individual PAGA claims along with those personal claims seeking victim-specific relief (i.e., nonPAGA claims) would not (1) make the lawsuit more procedurally complicated, (2) expand the discovery needed, or (3)

---

We recognize our Supreme Court's dicta is not controlling but it can be persuasive, sometimes highly so.  (See *Masellis v. Law Office of Leslie F. Jensen* (2020) 50 Cal.App.5th 1077, 1093.)  We also note that, elsewhere, the court left open the question of pursuing only individual PAGA claims.  (*Iskanian*, *supra*, 59 Cal.4th at p. 384 ["[W]hether or not an individual [PAGA] claim is permissible under the PAGA, a prohibition of [nonindividual PAGA] claims frustrates the PAGA's objectives."].)

increase the evidence needed because proof of the Labor Code violations entitling the plaintiff to recover victim-specific relief would also provide the basis for recovering civil penalties under PAGA. Thus, adding the individual PAGA claims to the underlying personal claims would not increase the complexity of the lawsuit. In contrast, the strictly conjunctive interpretation that requires the plaintiff to pursue both individual PAGA claims and nonindividual PAGA claims might greatly increase the time and effort required of the plaintiff to resolve the lawsuit[18] because of the extra effort needed to establish the nonindividual PAGA claims. In certain cases, the disincentive created by the extra effort would deter the plaintiff from pursuing *any* PAGA penalties on the LWDA's behalf. This reduction in PAGA actions would undercut "the vigorous assessment and collection of civil penalties as provided in the Labor Code." (Stats. 2003, ch. 906, § 1, subd. (b).) These consequences support the reasonableness of interpreting *may* and *and* broadly and not limiting a plaintiff's choices to either pursuing no PAGA claims or pursuing all PAGA claims. In other words, they support the conclusion that *and* is ambiguous in the context of former subdivisions (a) and (g)(1) of section 2699.

### c. *Grammatical Context—Linking Nonsubject Nouns*

The second grammatical aspect we consider is the use of *and* to link nouns that are the objects of the prepositional phrase "of himself or herself *and* other current or former employees." (§ 2699, former subd. (a), italics added.) This usage stands in contrast to the use of *and* to link nouns that are the sentence's subjects. (See *Revisiting the Ambiguity*, *supra*, 80 St. John's L.Rev. at pp. 1172–1174.) In *Revisiting the Ambiguity*,

---

**18** A court or arbitrator resolving PAGA claims "would have to make specific factual determinations regarding (1) the number of other employees affected by the labor code violations, and (2) the number of pay periods that *each* of the affected employees worked" and obtaining that information through discovery "would be significant and substantially more complex than discovery regarding only the employee's individual claims" for victim-specific relief and the LWDA's individual PAGA claims involving the same violations. (*Sakkab v. Luxottica Retail North America, Inc.* (9th Cir. 2015) 803 F.3d 425, 445, 445–447 (Smith, J., dissenting).)

37.

the authors provided examples of a variety of grammatical contexts in which *and*'s use is ambiguous, including its use to link nouns other than the sentence's subject where, as here, the sentence uses language of discretion. (*Id.* at pp. 1173–1174.) The first example states "[12] Acme may notify Able and Baker" could mean (1) "[12a] Acme may notify both Able and Baker, as opposed to one or the other of them" or (2) "[12b] Acme may notify either Able or Baker, or both of them." (*Id.* at p. 1174.) Similarly, the second example states "[13] Acme may dissolve Subsidiary A and Subsidiary B" could mean (1) "[13a] Acme may dissolve both Subsidiary A and Subsidiary B, as opposed to one of the other of them" or (2) "[13b] Acme may dissolve one or both of Subsidiary A and Subsidiary B." (*Ibid.*) The first interpretation in each example is narrow and corresponds to Employer's view. The second interpretation in each example is broad and corresponds to Sanchez's interpretation of PAGA.

The foregoing examples of *and*'s use with language granting permission are not structurally identical to former subdivision (a) of section 2699 because the examples use *and* to link nouns that are the sentence's direct objects rather in than nouns that are the objects of a prepositional phrase.[19] During oral argument, Employer's counsel argued the examples were inapt because the prepositional phrases modifying the *civil action* stated a condition that must be satisfied and the permissive *may* was irrelevant to the satisfaction of the condition. Here, we provide an example where *and* links the objects of a prepositional phrase. Suppose a parent grants a child permission to have a snack *of* cookies and ice cream. Thus, the child is granted the discretion to have a snack or forgo a snack. If the child chooses to have a snack and grabs two cookies from the cookie jar

---

[19]     The order we issued before oral argument advised counsel that they "should be familiar with examples [12a], [12b], [13a], and [13b] in *Revisiting the Ambiguity*. Unlike the language in former subdivision (a) of section 2699, these examples do not involve nouns that are the objects *of a prepositional phrase*." We also advised counsel to be prepared to consider hypotheticals involving linked nouns that were the objects of a prepositional phrase.

before returning outside to play, does the child violate the permission granted?  Our linguistic judgment is the child has not violated the permission given by having a snack of only cookies instead of both cookies and ice cream.  This approach could be described as determining the greater permission to have both includes the lesser permission of having either.  (See Civ. Code, § 3536 ["[t]he greater contains the less"].)

### d.      Conclusion:  The Text is Ambiguous

Based on *and*'s use with *may*, the statutory context in which those words appear, our Supreme Court's dicta, and the consequences that flow from the conjunctive interpretation and its all-or-nothing approach to the pursuit of PAGA claims, we conclude the statute is reasonably susceptible to the and/or (i.e., inclusive disjunctive) interpretation proffered by Sanchez.  To summarize, we conclude each side has presented a reasonable interpretation of the language in former subdivision (a) of section 2699 and, therefore, that language is ambiguous.[20]

### C.      Resolving the Ambiguity

The next step in the interpretative process is to resolve the ambiguity.  (See *V Lions Farming, LLC v. County of Kern* (2024) 100 Cal.App.5th 412, 434 [once ambiguities are identified, "the next step is to resolve the ambiguities"].)  In doing so, "courts must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute."  (*Cisneros v. Dept. of Motor Vehicles* (2024) 104 Cal.App.5th 381, 407.)  When *and* is used ambiguously, courts adopt a disjunctive reading " 'when necessary to

---

[20]     We recognize the Second District has concluded section 2699, subdivision (a) is unambiguous.  (*Leeper*, *supra*, 107 Cal.App.5th at pp. 1008–1009, rev. granted [part B.1. discusses the current version of § 2699, subd. (a)]; accord, *Williams v. Alacrity Solutions Group, LLC*, *supra*, 110 Cal.App.5th at p. 943 [§ 2699, former subd. (a)].)  Our analytical foundations and approach to the legal question of ambiguity are so different from what is stated and unstated in those opinions that readers can easily discern them without our explicit description of each difference.

accomplish the *evident intent* of the statute.' " (*People v. Reynoza*, *supra*, 15 Cal.5th at p. 991, italics added.)  Courts "may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history." (*Turrieta*, *supra*, 16 Cal.5th at p. 687.)

### 1.     Evident or Apparent Legislative Intent

Employer argues, in effect, that the intent of the Legislature is apparent or evident because the 2003 Legislature explicitly choose *and* over *or*.  In the version of Senate Bill No. 796 originally introduced, section 2699, subdivision (c) provided in part:  "An aggrieved employee may recover the civil penalty described in subdivision (b) in a civil action filed on behalf of himself or herself *or* others." (See Sen. Bill No. 796 (2003–2004 Reg. Sess.) as introduced Feb. 21, 2003, italics added.)  Later, the bill was amended to change the connector *or* to *and*.  (Sen. Bill No. 796 (2003–2004 Reg. Sess.) as amended May 1, 2003.)

An analysis for the Assembly Judiciary Committee for a June 26, 2003 hearing discussed technical amendments proposed by the author "to clarify the intent of the bill and correct drafting errors." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 796 (2003–2004 Reg. Sess.) as amended May 12, 2003, p. 8.)  It stated the change from *or* to *and* was "to correct a drafting error." (*Ibid.*)  Unfortunately, the analysis did not explain how the change affected the provision's meaning.  For example, it did not state the author intended the substitution of *and* for *or* to implement an all-or-nothing approach with respect to the pursuit of civil penalties in a PAGA action.  Conversely, it did not state the substitution was made to clarify the breadth of the permission given so it would correspond with the permission given in our example of a parent allowing a child to have a snack of cookies *and* ice cream.  In short, the reference to correcting a drafting error does not inform us whether the author intended to require potential PAGA plaintiffs to make the following choice:  pursue PAGA claims for violations suffered by *both* the plaintiff and other employees or, alternatively, forgo all PAGA claims.  Thus,

40.

notwithstanding the correction of a drafting error, the inquiry into the author's original intent in 2003 does not provide an unequivocal answer.

Moreover, the specific issue presented in this case is extremely unlikely to have been considered by any legislator. When legislators voted on the bills in 2003 and 2016, it is improbable any of them considered the possibility that the United States Supreme Court would hold the FAA and federal preemption required a PAGA action to be divided into two components—namely, the LWDA's individual PAGA claims and the LWDA's nonindividual PAGA claims—with the former being subject to arbitration under a predispute arbitration agreement made by the plaintiff. Further, the parties have presented no legislative history from PAGA's original enactment or any amendment through 2016 suggesting the Legislature had considered the possibility of headless PAGA actions. Accordingly, our analysis of the Legislature's *apparent* or *evident* intent leads to a dead end—the Legislature had no specific intent on the question of headless PAGA actions. Restated in terms of Code of Civil Procedure section 1859, we have inquired into "the intention of the Legislature" and determined it is not "possible" to identify and "pursue[]" any intention on the specific question of whether PAGA allowed a plaintiff to avoid arbitration by bringing a PAGA action that asserts only nonindividual PAGA claims.

### 2. *General Legislative Intent and Purpose*

In the absence of any legislative intent on the specific question presented, we broaden our inquiry to determine the Legislature's general intent so as to effectuate PAGA's purpose. (*Turrieta*, *supra*, 16 Cal.5th at p. 687.)

The Legislature's general intent and its purpose in enacting PAGA is clear as a result of the explicit findings and declaration made when PAGA was enacted. (See Stats. 2003, ch. 906, § 1, subd. (a)–(d), quoted in pt. I.B., *ante*.) Thus, our inquiry is more firmly grounded than one evaluating " ' "the ostensible objects to be achieved." ' " (*Turrieta*, *supra*, 16 Cal.5th at p. 687.) " 'The Legislature enacted PAGA to remedy

41.

systemic underenforcement of many worker protections.' " (*Turrieta*, *supra*, 16 Cal.5th at p. 690, quoting *Williams v. Superior Court* (2017) 3 Cal.5th 531, 545.) "PAGA is based on the Legislature's intent to maximize the enforcement of labor laws. (*ZB*, *supra*, 8 Cal.5th at p. 184.)" (*Estrada v. Royalty Carpet Mills, Inc., supra,* 15 Cal.5th at p. 607.)

To deal with the underenforcement and related lack of funding, PAGA deputized aggrieve employees to sue on behalf of the state to collect penalties imposed for Labor Code violations. (*Turrieta*, *supra*, 16 Cal.5th at p. 690.) Collecting the penalties furthered " '*the state's* interest in penalizing and deterring employers who violate California's labor laws.' " (*Ibid*., quoting *Iskanian*, *supra*, 59 Cal.4th at p. 387.) Several interests are promoted when labor law violations are deterred, including those of the state along with those of competitors and employees of potential labor law violators. Deterring violations and bringing the underground economy into compliance with tax and licensing laws promotes the state's interest in collecting revenue. (See pt. I.B., *ante*.) The interests of businesses that comply with California's labor laws are furthered by deterring violations and eliminating a competitive advantage of violators who underpay their workers. (See pt. I.B., *ante*.) And, obviously, deterring violations furthers the interests of worker in receiving the compensations and working conditions specified by the Labor Code. (See *ZB*, *supra*, 8 Cal.5th at p. 190 [statutes governing employment conditions are liberally construed to favor the protection of employees].)

Based on the clearly identified legislative purpose in enacting PAGA, the question of statutory construction before us can be rephrased as which construction best effectuates "the statute's purpose to ensure effective code enforcement." (*Kim*, *supra*, 9 Cal.5th at p. 87.) More specifically, does requiring an aggrieved employee to pursue the LWDA's individual PAGA claims in arbitration before pursuing the LWDA's nonindividual PAGA claims in court enhance or diminish effective enforcement of California's labor laws? In our view, courts striving to be faithful agents of the Legislature should take a realistic approach in resolving this question, which means

considering the consequences each interpretation will generate when applied to the current legal landscape. " 'Hurdles that impede the effective prosecution of representative PAGA actions undermine the Legislature's objectives.' " (*Estrada v. Royalty Carpet Mills, Inc.*, *supra*, 15 Cal.5th at p. 609, quoting *Williams v. Superior Court*, *supra*, 3 Cal.5th at p. 548.)[21]

### 3. Promoting Effective Labor Code Enforcement

One commentator recently asserted "that arbitration is at best incompatible with PAGA's stated objectives and at worst directly opposed to them." (Gauffeny, *The PAGA Problem: Conflict Between California Employment Policy and Federal Arbitration Act Expansion* (2024) 57 Loy. L.A. L.Rev. 167, 201 (hereafter *The PAGA Problem*); see Meshel, *Employment Arbitration: Recent Developments and Future Prospects* (2024) 39 Ohio St. J. on Disp. Resol. 279, 321–322 [after *Viking River* and *Adolph*, plaintiffs "are arguably worse off, having to pursue parallel avenues for individual and [nonindividual] PAGA claims"].)

The usual criticisms of arbitration in the employment context include (1) employer's enjoying a higher percentage of favorable rulings when compared to court actions; (2) awards that are, on average, lower than those obtained in court; and (3) procedural restrains, such as limitations on discovery, that favor the employer. (See *The PAGA Problem*, *supra*, 57 Loy. L.A. L.Rev. 201–203; see also, Chandrasekher & Horton, *Arbitration Nation: Data from Four Providers* (2019) 107 Cal. L.Rev. 1, 18–26 [summarizing empirical studies; "we determined that the probability of an employee win declined about 58% when the employee sued [] either a high-level or super repeater, as opposed to a one-shotter"]; St. Antoine, *Labor and Employment Arbitrations Today:*

---

[21] We interpret the term "representative PAGA actions" to mean PAGA actions as defined earlier in this opinion. Thus, the adjective "representative" was a redundancy used to emphasize all PAGA actions are representative in the sense that the plaintiff acts as the LWDA's agent.

*Mid-Life Crisis or New Golden Age?* (2017) 32 Ohio St. J. on Disp. Resol. 1, 14 ["no question that if employees win in a court action, they generally receive more than when they win in an arbitration. That is especially true if it is a jury case"].)

In comparison, proponents of arbitration assert its advantages include flexibility, neutrality, finality, privacy, procedural informality, cost-efficiency, speed, and the expertise of the arbitrator chosen. (See Lindquist & Dautaj, *AI in International Arbitrations: Need for the Human Touch* (2021) 2021 J. Disp. Resol. 39, 43; see *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 349 [benefits of private dispute resolution are lower costs, greater efficiency and speed, and the ability to choose expert adjudicators].) The California Supreme Court routinely refers to the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) as a comprehensive statutory scheme in which the Legislature "expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9, accord, *Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 492.)[22]

The speedy-resolution rationale for favoring arbitration leads us to consider some recent cases showing the amount of time taken to complete an arbitration of an employment dispute. In *Rodriguez v. Lawrence Equipment, Inc.* (2024) 106 Cal.App.5th 645 (*Rodriguez*), the complaint was filed in December 2015, the non-PAGA claims were ordered to arbitration in July 2016, the arbitration hearing was conducted in February 2018, and the order confirming the arbitration award in favor of the employer was entered in June 2018. (*Rodriguez*, *supra*, at pp. 652–653.) Thus, proceedings involving

---

[22] In our view, the public policy favoring arbitration does not justify adopting an interpretation of PAGA that is less effective at enforcing California's labor laws because the arbitration legislation is general in nature and PAGA was enacted to deal with the specific problem of underenforcement of the Labor Code. A particular statutory provision or a particular legislative intent "is paramount to" a general provision or intent. (Code Civ. Proc., 1859; see *Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 634 [more specific provisions take precedence over more general ones].)

the arbitration took roughly two years. Similarly, in *Rocha v. U-Haul Co. of California* (2023) 88 Cal.App.5th 65 (*Rocha*), the initial complaint was filed in November 2015 and the arbitrator issued a decision in favor of the employer in August 2019. (*Rocha*, *supra*, at pp. 73, 74.) The appellate court stated the consolidated arbitration proceedings for the two plaintiffs (who were brothers) "spanned approximately two years." (*Id*. at p. 74.)[23]

Here, Employer's reply to Sanchez's return asserts Sanchez "appears to imagine a prejudice arising from the bifurcation of PAGA claims and the speculative time delay that would occur from sequencing the two types of claims." Employer's argument that a delay in the prosecution of PAGA claims is speculative is not convincing for at least two reasons.

First, the many examples provided by case law of how long it takes to complete an arbitration proceeding and, applying commonsense, it is obvious that arbitrating the LWDA's individual PAGA claims before conducting court proceedings on the LWDA's nonindividual PAGA claims would take longer than skipping the arbitration and immediately commencing litigation of the latter claims in court.

Second, Employer's recent argument that any delay is speculative directly contradicts the position taken in Employer's writ petition, which acknowledged the delay existed and asserted plaintiff's counsel were using a headless PAGA action as a mechanism for avoiding the delay. Employer's writ petition argued that allowing litigants to pursue headless PAGA actions rewards gamesmanship by plaintiff's counsel

---

[23]    In *Castelo v. Xceed Financial Credit Union* (2023) 91 Cal.App.5th 777, an employee sued for age discrimination and wrongful termination without including a PAGA claim. The parties stipulated to binding arbitration in October 2019; the arbitrator issued an award in December 2020; and the trial court confirmed award in February 2021—16 months after the stipulation. (*Id*. at pp. 783–784, 786.) In *Valencia v. Mendoza* (2024) 103 Cal.App.5th 427, the purchasers of a home sued the sellers for fraudulent concealment of defects. The parties stipulated to binding arbitration in January 2019; the arbitration hearing held over five days in June 2021; and the arbitrator issued award in August 2022—three and a half years after the stipulation. (*Id*. at p. 434–435.)

45.

to the detriment of the plaintiff.  The detriment to the plaintiff is the absence of any economic benefit from the headless PAGA action, which would not recover any civil penalties for violations suffered personally by the plaintiff.  Under Employer's argument, the benefit to the plaintiff's attorney would be avoiding the bifurcated proceedings because, in such proceedings, "the ultimate timeline may require multiple years before plaintiff's counsel recovers any attorney's fees under the statute."  This description of the different timelines for headless PAGA actions and other PAGA actions subject to bifurcated proceedings plainly acknowledges that headless PAGA actions would be completed faster than an arbitration of the LWDA's individual PAGA claims, followed by court proceedings on the LWDA's nonindividual PAGA claims.

Consequently, we conclude bifurcated proceedings across two forums constitute a hurdle in the sense that they slow down the prosecution of the nonindividual PAGA claims, which nearly always will address more violations and result in more civil penalties than the individual PAGA claims.  (See *Hernandez v. Ross Stores, Inc.*, *supra*, 7 Cal.App.5th at p. 178 ["requiring an employee to litigate a PAGA claim in multiple forums would thwart the public policy of PAGA to 'empower employees to enforce the Labor Code' on behalf of the state"].)  In addition, the empirical studies of arbitration outcomes suggest the employee is less likely to be found to be an aggrieved employee by an arbitrator than by a court.  (See Chandrasekher & Horton, *Arbitration Nation: Data from Four Providers*, *supra*, 107 Cal. L.Rev. at pp. 18–26.)  The slower and less favorable outcomes would undercut the incentives created by PAGA.  As a result, we consider the consequences of reduced incentives.  The obvious answer of reduced incentives is a reduction in PAGA actions.  In other words, if headless PAGA actions are allowed, more PAGA actions will be filed and pursued.  In comparison, if headless PAGA actions are not allowed, fewer PAGA action would be pursued because of the hurdles created by arbitration.

46.

Employer also argues that in a headless PAGA action the "individual plaintiffs are the most likely to lose out (while allowing their attorneys to gain all the benefit), and that should not be permitted." The assertion that plaintiffs' attorneys will "gain all the benefit" of a headless PAGA action is obviously false, even if only monetary benefits are considered. If a headless PAGA action is successful, the LWDA will benefit financially by receiving 75 percent of the civil penalties collected and the other employees will benefit by receiving the remaining 25 percent. In addition, the violator's existing employees may benefit indirectly if the penalties deter further violations and the employees are compensated as envisioned by the Labor Code.

In addition, Employer's point about the lack of a financial benefit to the plaintiff in a headless PAGA action misses the mark because PAGA penalties are not intended to compensate employees for actual losses incurred. (*Adolph*, *supra*, 14 Cal.5th at p. 1117.) Rather, the penalties are calculated to punish employer wrongdoing and deter violations. (*Ibid*.) Thus, the absence of a monetary recovery by the plaintiff does not demonstrate headless PAGA actions would not vindicate " '*the state's* interest in penalizing and deterring employers who violate California's labor laws.' " (*Turrieta*, *supra*, 16 Cal.5th at p. 690.)

We conclude the interpretation of PAGA that best promotes "effective code enforcement" (*Kim*, *supra*, 9 Cal.5th at p. 87) and provides the more "effective disincentive for employers to engage in unlawful and anticompetitive business practices" (Stats. 2003, ch. 906, § 1) allows PAGA plaintiffs and their counsel the flexibility to choose among bringing a PAGA action that seeks to recover of civil penalties on (1) the LWDA's individual PAGA claims, (2) the LWDA's nonindividual PAGA claims, or (3) both.[24] This interpretation does not, as suggested by Employer, eliminate or otherwise

---

[24] We note it is possible to argue arbitration is, in fact, a more favorable forum for employees because only "courts may award a less amount that the maximum civil penalty amount specified by [PAGA.]" (§ 2699, former subd. (e)(2).) A narrow interpretation of the word "court" would exclude arbitrators and, as a result, arbitrators would not have the

undermine PAGA standing requirements because a plaintiff must be an aggrieved employee to pursue a headless PAGA action.

### D. Meaning of the Phrase "on behalf of"

Here we define a limit on this opinion by expressly describing an issue of statutory construction not addressed in this opinion—the meaning of the phrase "on behalf of" used in former subdivision (a) of section 2699. (See *Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1252 [opinions are not authority for propositions not considered].) It appears the parties have assumed the civil action is *on behalf of* an employee (either the plaintiff or another employee) only if it seeks to recover a civil penalty for one or more violations suffered by the employee and, under former subdivision (i) of section 2699, 25 percent of the civil penalty would be distributed to the employee aggrieved by the violation.

The phrase "on behalf of" might be interpreted more broadly. A dictionary defines it to mean "in the interest of : as the representative of : *for the benefit of* < this letter is written in behalf of my client >." (Webster's Third New Internat. Dict. (1993) p. 198, italics added.) Thus, a PAGA plaintiff could argue a civil action is brought on his or her behalf if the action has the potential to further *any interest* of the plaintiff or provide the plaintiff with *any benefit*, not just a 25 percent share of one or more civil penalties. Such an interest or benefit might include being able to use the "limited, nonmutual issue preclusion" (*ZB*, *supra*, 8 Cal.5th at p. 197) resulting from a judgment in a PAGA action to obtain remedies other than the civil penalties collectable under PAGA (see *ibid*.). If this broad interpretation was adopted, a headless PAGA action would be allowed even if *and* was given a conjunctive interpretation.

---

statutory discretion to award less than the maximum penalty for each violation. In other words, an arbitrator would be obligated by PAGA to award the maximum civil penalty amount specified by PAGA for each violation established.

E.     Scope of an Agent's Authority in Prosecuting a PAGA Action[*]

The order to show cause issued in this matter asked the parties to address whether an employee authorized by operation of section 2699.3 to commence a civil action as the LWDA's representative had the authority to pursue only nonindividual PAGA claims when the section 2699.3 written notice did not inform the LWDA that the employee might not pursue the individual PAGA claims referred to in the written notice.  We asked the parties to consider PAGA's text, general principles of agency law (see Civ. Code, §§ 2304–2326), and the contents of the written notice.

In *Turrieta*, the court discussed the implied power to *prosecute* a PAGA action derived from the express power to *commence* a PAGA action.  (*Turrieta*, *supra*, 16 Cal.5th at p. 689.)  The implied powers include "serving the summons and complaint, taking discovery, filing motions, attending trial, and presenting evidence."  (*Ibid*.)

Here, we have concluded the text of former subdivision (a) of section 2699 gives PAGA plaintiff the discretionary authority to choose the type of PAGA claims included in the PAGA action they commence.  Consequently, the question we address here is narrowed to whether this discretionary authority to choose is expressly or implied negated by other provisions in PAGA or by general principles of agency law.

First, the parties have not cited, and we have not located, any provision in PAGA that expressly limits the discretionary authority to pursue a headless PAGA action.  Second, we conclude it is not appropriate to adopt implied limitations on the discretionary authority granted by former subdivision (a) of section 2699 because such limitations would not further the effective enforcement of California's labor laws.  (See pt. IV.C.3., *ante*.)

---

[*]     See footnote, page 1, *ante*.

49.

F.      <u>Changed Circumstances and the Current Version of PAGA</u>[*]

Here we caution why our interpretation of the previous version of PAGA would not necessarily lead us to interpret the current version of PAGA the same way. We recognize the text in former subdivision (a) of section 2699 is similar to the text in the current version, which refers to "a civil action brought by an aggrieved employee *on behalf of the employee and other current or former employees* against whom a violation of the same provision was committed pursuant to the procedures specified in Section 2699.3." (Stats. 2024, ch. 44, § 1, italics added.) However, whether the word *and*, the phrase *on behalf of*, or both, should be interpreted broadly in the current version of PAGA may be affected by a change in factual circumstances from those existing in 2016. Specifically, the LWDA's collection of civil penalties in recent years may mean there now is "[a]dequate financing of essential labor law enforcement functions" (Stats. 2003, ch. 906, § 1, subd. (a)) and "[s]taffing levels for state labor law enforcement agencies have" increased (Stats. 2003, ch. 906, § 1, subd. (c)). A dispute about the resources available to the LWDA and its agencies was raised by the parties in *Turrieta*, but the court did not take judicial notice of the documents addressing the issue and it made no factual findings about existing funding or staffing levels. (*Turrieta*, *supra*, 16 Cal.5th at p. 694, fn. 13.)

The factual issue of a "shortage of government resources to pursue enforcement" of the Labor Code (*Iskanian*, *supra*, 59 Cal.4th at p. 379) is beyond the scope of this opinion. For this and other reasons, how facts about current funding and staffing levels impact the interpretation of PAGA is not addressed here.

---

[*]      See footnote, page 1, *ante*.

**DISPOSITION**

The petition for a writ of mandate is denied. The order to show cause and the stay is discharged with the finality of this opinion. Plaintiff Espiridon Sanchez shall recover his costs in this writ proceeding. (Cal. Rules of Court, rule 8.490(a)(1)(A).)

FRANSON, J.

WE CONCUR:

DETJEN, Acting P. J.

DE SANTOS, J.